32887. SCARBORO *v.* THE STATE.

DECIDED JULY 7, 1950. REHEARING DENIED JULY 28, 1950.

*Calvin B. Oliver, J. W. Bloodworth, J. D. Godfrey, Casey Thigpen, Harris, Chance & McCracken,* for plaintiff in error.

*Charles H. Garrett, Solicitor-General, William M. West,* contra.

MacIntyre, P. J. 1. "Embezzlement is an intentional and fraudulent appropriation of the goods of another by a person intrusted with the property of the same. In the common-law definition of larceny, we must remember, there are two gaps through which, in the expansion of business, many criminals escaped. The first of these gaps is caused by the position that to maintain larceny it is necessary that the stolen goods should have been at some time in the prosecutor's possession. The second results from the assumption that when possession of goods is acquired bona fide by a bailee, no subsequent fraudulent conversion (unless there be breaking of bulk or some other rupture of the conditions of bailment) can be larceny while the bailment lasts. To cure these defects were passed the embezzlement statutes of England and of most of the United States. These statutes were intended simply to make penal two phases of theft not previously penal. If a servant (and this is the first of the two) steal his master's goods before they have come into his master's possession, this is to be indictable as embezzlement. And the second is that it shall be also embezzlement for a trustee or bailee to fraudulently convert to his own use his master's goods he may have bona fide received. Now, as

neither of these cases is larceny at common law, the statutes of embezzlement in no way overlap the old domain of larceny. They were passed solely and exclusively to provide for cases which larceny at common law did not include. Hence, nothing that is larceny at common law is indictable under the English embezzlement statutes, and those of a similar type; and nothing that is indictable under these statutes is larceny at common law. And by applying this test we will find that the embezzlement statutes fall into two distinct and widely different classes; First, those meeting the case of servants and clerks appropriating their master's property before it reaches his possession; and secondly, those meeting the case of trustees and bailees appropriating goods of which they obtained possession bona fide." 2 Wharton's Criminal Law (12th ed.) p. 1568 et seq., § 1258. In Georgia the rule is that if both the offenses of embezzlement and of simple larceny are committed in the same transaction and the indictment is so worded as that it includes the smaller offense of simple larceny, the defendant may be convicted of either. *Martin* v. *State*, 123 *Ga.* 478 (51 S. E. 334); *Goldin* v. *State*, 104 *Ga.* 549, 550 (30 S. E. 749); *Lanier* v. *State*, 17 *Ga. App.* 261 (86 S. E. 417). Code § 26-2801 provides: "Any officer, servant, or other person employed in any public department, station, or office of government of this State or any county, town, or city thereof, who shall embezzle, steal, secrete, or fraudulently take and carry away any money, paper, book, or other property or effects, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor more than seven years." Count 5, of the indictment in the present case—and as to material matters count 6 is the same—is as follows: L. F. Scarboro is accused with "having committed the offense of a felony; for that the said accused, . . on the 23rd day of January, 1949, did then and there unlawfully, with force and arms, fraudulently and feloniously, being then and there a public officer, the Chief of Police of the City of Warner Robbins, Georgia, a municipal corporation of this State, embezzle, steal, secrete, and fraudulently take and carry away, of the property of said city, which came into his hands by virtue of his official position, money, vouchers and checks, in denominations and forms and of other description to the grand jurors

unknown, the sum of $10, which had been delivered to the said accused by Mrs. J. M. Gantt, which property being of the value of $10 [etc.]." Thus, it will be seen that under the allegations of this indictment the defendant chief of police comes within the class of cases of an employee's appropriating his employer's (the city's) property before it reached the city's possession and could be convicted of embezzlement if the evidence so shows. This statute (Code § 26-2801) filled a "gap" which makes it unnecessary that the stolen goods should have been at some time in the possession of the prosecutor before the defendant could be convicted of an offense. "Cash bail or deposits in lieu of bail may only be accepted where permitted by statute and only by the person so authorized." 8 C.J.S., p. 107, § 52. We find no case decided in this State which approves or authorizes the deposit with the arresting officer in lieu of bond or recognizance and the record in this case is silent as to any ordinance of Warner Robbins, if any, covering that subject. "The chief of police of an incorporated municipality who receives under color of his office deposits made by persons charged with violations of the ordinances of the municipality, in order that such persons may be released from confinement pending trial, may not assert that the receipt of the deposits so made was illegal; and in an action brought against him by the municipality to recover the amount of such deposits, he will not be permitted to defeat the same by alleging his illegal action." State ex rel. City of Beckley v. Roberts, 129 W. Va. 539 (40 S. E. 2d, 841). In Ex parte Hedley, 31 Cal. 108, 113, the California court adopts the reasoning of Bishop, one of the most distinguished American writers on the subject of criminal law, who argues "that in reason whenever a man claims to be a servant while getting into his possession by force of this *claim* [of agency] the property to be embezzled, he should be held to be such on his trial for the embezzlement. Why should not the rule of estoppel known throughout the entire civil department of our jurisprudence apply in the criminal? If it is applied here then it settles the question; for by it, when a man has received a thing of another under a claim of agency, he cannot turn round and tell the principal asking for the thing, 'Sir, I was not your agent in taking it, but a deceiver and a scoundrel.'

(Bishop Crim. Law, § 367, 3rd ed.)." This same argument of Bishop is quoted with approval in State *v.* Spaulding, 24 Kan. 1, 10. The defendant assumed and claimed to be a person employed in the office of government of the City of Warner Robbins as chief of police, and having so acted and obtained possession of the property on that assumption, if he was chief of police, being then and there employed in a public department or office of the government of such city he collected the money as a deposit in lieu of bail to answer in the police court for a violation of the city ordinances and the city having tacitly acquiesced in his acts and conduct, the defendant is now estopped to deny, even in this criminal prosecution that he was entrusted with this money, even though he converted the money before it reached the city's possession. People *v.* Jones, 87 Cal. App. 482 (262 Pac. 361). See, in this connection, *Cooper* v. *State,* 101 *Ga.* 783 (2) (29 S. E. 22). Such acts do not change the real title to the money, but bar the defendant from contesting the ownership with the city. *Yarbrough* v. *Seagraves,* 47 *Ga. App.* 436 (170 S. E. 553). We do not say that the city was concluded by the defendant's acts, nor, indeed that anyone is estopped by the defendant but himself. The practice of receiving deposits of money or other property in lieu of recognizances or bonds with proper surety indulged in by the City of Warner Robbins is not approved and is without authority at law. The defendant in this case received money which did not belong to him, collected by him without legal authority, but under color of his office as chief of police of the City of Warner Robbins, in conformity with an established custom. It was his duty to collect and account for all fines assessed and costs imposed by the police judge of the City of Warner Robbins, but that does not release the defendant from accounting to the City of Warner Robbins for the same. We think that the city had at least a species of special property therein, which coupled with the absence of any right of property therein as to Scarboro, places him in the category of a defaulter as authorizes the laying of the ownership in the city in the indictment. *Thomas* v. *State,* 27 *Ga. App.* 38, 39 (107 S. E. 418); *City of Beckley* v. *Roberts,* supra. In other words, all ownership of the property in the defendant was negatived by the evidence. Indeed, he, himself,

did not claim to own the property. The rights of the persons who made such deposits, as against the City of Warner Robbins, are not before us for consideration in this case, and the unwarranted and illegal method under which the money was deposited is of no avail to the defendant Scarboro on this trial for embezzlement of such money. The evidence authorized the verdicts finding the defendant guilty of embezzlement under counts 5 and 6 of the indictment.

2. Upon the hearing of the motion for a new trial the State made a counter-showing on special ground 4, based upon newly discovered evidence, so that a conflict arose as to the material facts upon which the ground is based and a reviewing court will not, except in a case of manifest abuse of discretion reverse the judgment of the trial court in such a case. The material part of the newly discovered evidence sought to show that subsequently to the trial here for embezzlement, the City of Warner Robbins had docketed and dismissed the cases against the persons referred to in counts 5 and 6, who had deposited cash bonds with the chief of police and whatever special property or ownership the city might have had in the cash bonds, it no longer existed. The question, as to whether the depositors of the money put up as cash bonds were entitled to recover the money that the defendant had wrongfully and fraudulently converted to his own use, for the reason that the city had, since the trial of this defendant, had those cases docketed and dismissed, was not before the trial court in this case; and the rights of the persons who made the cash bonds, as against the City of Warner Robbins, are not before us nor are they or either of them parties in this case. This is the case of Scarboro v. State, and we have expressly ruled that neither the rights of the depositors of the cash bonds nor of the City of Warner Robbins are affected by the trial of the instant case. We have already said that neither the depositors nor the City is estopped; that no one but the defendant himself is estopped. In the language of the trial judge: "there was no contention that he [the defendant] was still holding it [the cash] for the city or for any one charged with an offense against the city. There was a sharp issue upon the trial only on the question as to whether this money had been actually paid to the city, Mr. Scarboro con-

tending it had been and the State contending that it had not. We think that the judge did not abuse his discretion in overruling the ground of the motion for a new trial based upon newly discovered evidence, or err in refusing to strike the State's counter-showing upon this ground.

3. In special ground 5 error is assigned upon the following portion of the court's charge to the jury: "Now, gentlemen, all of the stated elements, that is those elements of the alleged offenses charged in this special presentment must be proven beyond a reasonable doubt by the State, and to complete the alleged offense charged in each count in this indictment, it must also be proven beyond a reasonable doubt that this defendant made a wrongful conversion—I will state it this way; that this defendant, while the public officer as described in this indictment, did in this count as alleged in this indictment, make a fraudulent conversion of the money, checks or vouchers described in each of the counts in this special presentment; (I will withdraw the word 'indictment,' gentlemen and you will consider that I used the words special presentment instead) and that this conversion, if any, that is the wrongful and fraudulent conversion, if any, was done with the intent to steal the same." The defendant contends that this portion of the charge is error for the following reason: "At no time did the court charge the jury substantially as follows: The facts necessary to show misappropriation or conversion can only be inferentially shown. A fraudulent appropriation is to be inferred from facts. A public officer cannot be legally convicted of the offense of embezzlement by showing a mere refusal or neglect to pay over funds which came to his hands. In addition thereto there must be some evidence of other things from which it may clearly be inferable that the neglect to turn over the funds was either in contemplation of a misappropriation or was a consequence of misappropriation. Proof that the officer falsified his accounts, that he was guilty of evasion in explaining his default, that he fled, or other similar acts indicating guilt sufficiently makes a case to put the defendant on explanation or, if not satisfactorily explained, a conviction would be authorized. But without some similar evidence neither the misappropriation nor the guilty intent is sufficiently shown." The whole trial was predicated up-

on the proposition that the money described in the counts of the special presentment upon which Scarboro was convicted were received by him for the benefit of the city. There was no contention even by Scarboro that this money was to be held by him as bond money, but on the contrary, he stated that he had received it as agent of the city for the benefit of the city and that he had paid all of it to the financial agent of the city. We do not think that under the record in this case it is reversible error to fail to elaborate on the charge here excepted to.

For the foregoing reasons the court did not err in refusing to strike the State's counter-showing as to ground 4 of the motion for a new trial, based upon newly discovered evidence, or in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, P. J. As to ground 2 of the motion for rehearing the following rule is controlling and adverse to the movant: " 'It has always been allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate his intent or motive in the particular act directly in judgment.' . . 'If evidence is admissible on behalf of the defendant for any purpose, though its effect on plaintiff's case may be serious, this will not make its admission erroneous as irrelevant.' " *Bates* v. *State,* 18 *Ga. App.* 718 (90 S. E. 481). See also *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26). This and all other matters in the motion and supplemental motion for rehearing having been considered, the motion for rehearing is

*Denied. Gardner and Townsend, JJ., concur.*