## Gurr *vs.* Martin, executor.

1. Where one employed a cropper to cultivate his farm on certain terms, for which he was to pay such cropper a certain share or certain parts of the crop when made, reserving possession of it, or delivery to him, until advances made should be paid back, such contract did not constitute a partnership.

(*a.*) Were it otherwise, the facts of this case do not require an injunction.

2. Whether the widow of a deceased partner could have a year's sup-

port out of partnership effects, in preference to debts due by the partnership, and whether equity would take those effects from the surviving partner's control to pay those debts.   *Quere?*

February 7, 1885.

Partnership.   Contracts.   Injunction.   Husband and Wife.   Year's Support.   Before Judge FORT.   Macon County.   At Chambers, November 25, 1884.

Amanda M. Gurr filed her bill against T. S. Martin, executor, alleging, in brief, as follows : Defendant and the husband of complainant were partners in farming.   Her husband died, leaving no estate, except his interest in the partnership property.   She applied for a year's support out of it, and appraisers were appointed to set it aside. After the death of complainant's husband, defendant took charge of the partnership business, and he is gathering and marketing the crop, and represents that the business "will not pay out."   The alleged debts are, in part, debts due for supplies and money borrowed.   Defendant is using and appropriating the effects.   Injunction was prayed to restrain the selling or removal of the property until an accounting with complainant, and until the appraisement could be had.

Defendant answered, denying that there was any partnership, and claiming that, under the contract, he had the right to control the property in order to settle the business.

The contract between the deceased and defendant was as follows :

"The said Martin agrees to furnish to the said Gurr for farming purposes the present year, 1884, on the farm of land in Houston county, known as the John Martin farm, the following property, to be used only on said farm: five mules and one horse, horse to be used only a portion of the year, the farm for cultivation on which said Gurr now lives, together with the necessary implements, such as is now in use on said farm; also cotton-seed to plant and for manure; also said Martin to furnish one-half of guano.   Said Martin loans all cotton-seed for manure, and is to hold all cotton-seed grown on the place the present year.   Said Gurr to have no interest in any cotton-seed

v 73-35

grown on said place the present year, he having furnished none. Said Martin further agrees to advance, for the support of said Gurr the present year, 100 pounds meat (only 100 pounds meat for the whole year) and $10.00 per month for ten months of the present year, said Gurr to pay said amounts back to said Martin. Said Martin further agrees to loan to said Gurr corn to ration the hands, if the same is on the place. Now, the said Gurr, of the second part, agrees to furnish a sufficient amount of labor, and feed for said labor, for said farm, and to pay the same, to make and gather and house the same; said crops consisting of cotton, corn, peas, etc.,—said gathering and making to be done in a good manner, repair fences and other things necessary on said farm during said year, take care of stock, etc. Now, in consideration of said Gurr furnishing said labor and feeding and paying the same during the said year, to make and house the whole crop, and perform such other service as is usually done on a farm, the said Martin agrees to pay said Gurr one-half of the following crops made, gathered and housed by him (Gurr): cotton, corn, fodder, peas and potatoes; one-half of all the pigs raised by him the present year; stock, hogs, sows to remain in possession of said Martin, said Gurr to have no interest in them. All hogs fattened out of the corn grown on the place before divided; the whole hogs and pigs to be fed out of joint corn from August 31st and thereafter. It is further agreed and understood that said Gurr is to deliver the whole of said cotton crop to said Martin at his store, or where he, the said Martin, may desire. It is further agreed and understood that the whole of said crops are to remain in the possession of said Martin until the whole advances made to said Gurr, or the labor on the said farm by him, the said Martin, is fully paid; said Martin reserves the fruit on said farm the present year. It is further agreed and understood that this contract is in full force from January 1st, 1884, to November 30th, 1884, at which date (Nov. 30, 1884,) the same expires."

The chancellor refused the injunction, and complainant excepted.

H. A. MATHEWS, for plaintiff in error.

J. A. EDWARDS, for defendant.

JACKSON, Chief Justice.

Two points are made in this record: first, do the allegations or does the contract make a partnership; and secondly, if so, are a widow and family entitled to a year's

support out of partnership effect in the hands of the sur-- viving partner to pay debts, it requiring all the funds to pay the partnership debts? If either question be decided. in the negative, the chancellor did not err in refusing the writ of injunction.

1. We are very clear that the contract between these parties makes no co-partnership. 42 *Ga.*, 226; 48 *Ib.*, 425. The complainant's husband was a cropper employed by the defendant to cultivate his farm on certain terms, for which the defendant was to pay him a certain share of certain parts of the crop when made, reserving possession of it, or delivery to him of it, until advances he made to feed the complainant's husband and his co-laborers should be paid back to him. It is true that in some of its aspects it looks like a *quasi* partnership, but very restricted in terms and conditions—so much so as, even if it could be classed as a partnership at all, equity would not grant the harsh writ of injunction to restrain the defendant from controlling and using the entire crop, until he had reimbursed himself. He is perfectly solvent, and can answer any claim the widow may have, and any year's support the ordinary may give her. It seems that the appraisers gave her a certain sum out of the husband's part of the crop, after the defendant is paid, which is right, and which, in his answer, he says he is, and always has been, willing to allow her. True, in an amendment, the complainant says she has filed objections to the return of the appraisers on this point; but, even if they are sustained, which will hardly occur, the defendant is amply able to pay what she is finally allowed. The chancellor could not do otherwise than deny the writ of injunction.

2. This makes it unnecessary to rule the other very interesting question, whether, on a clear partnership, the widow could have a year's support out of partnership effects, in preference to the debts due by the partnership, and whether equity would take those effects from the surviving partner's control to pay those debts. This is a point of much.

interest, on which no opinion is expressed.   *Quere*, is the answer now given to it.

Judgment affirmed.